No. 21893.

KENNETH BOYD *v.* JAKE O. BROYLES AND BROYLES FARMS COMPANY, INC.
(431 P.2d 484)

Decided September 5, 1967.

D. E. Johnson, for plaintiff in error.

Carl M. Shinn, for defendants in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

This is a contract case and arises out of a dispute between a landlord and his tenant.

Jake O. Broyles and Broyles Farm Company, Inc., collectively referred to hereinafter as Broyles, owned a certain tract of land situate in Crowley County. Kenneth Boyd occupied and was farming the tract of land thus owned by Broyles, although Boyd's exact status in connection with his occupancy of the land was one of several disputed matters then existing between Boyd and Broyles.

In an effort to resolve all of the outstanding matters then in dispute between the two parties, on May 18, 1961 Boyd and Broyles entered into a written agreement whereby Boyd agreed to vacate the property in question and relinquish to Broyles "all rights and claims of whatsoever kind, including agricultural program payments, he may have had in the land and buildings," as well as also relinquishing any and all claims that he had against Broyles personally. In return therefore, Broyles agreed

to pay Boyd the sum of $850. Both Boyd and Broyles were represented by counsel in the negotiations leading up to the execution of the aforementioned agreement.

Pursuant to this agreement Broyles then delivered his personal check for $850 to Boyd's attorney. Though Boyd had signed the agreement, he very shortly thereafter changed his mind and claimed that he signed the aforementioned contract only under fraud and duress. He promptly discharged his attorney and his attorney proceeded to return the check for $850 to Broyles.

Thereafter, Boyd sought and obtained certain "Federal Government's Feed Ground Retirement" payments then due in connection with the land here involved for the year 1961, with Broyles also obtaining a portion of the retired acreage payments due in connection with said land for that particular year.

It was against this factual backdrop that Boyd brought an action against Broyles, seeking certain of the retired acreage payments received by Broyles, as well as asking for general damages for Broyles' breach of an alleged farming lease between the parties. Broyles placed in issue Boyd's several claims against him, and also asserted a counterclaim in the sum of $3,185.19. This case was tried to a jury and resulted in a judgment whereby neither party enjoyed any recovery from the other. In other words, the jury by its verdict disallowed Boyd's claims against Broyles, and at the same time rejected Broyles' counterclaim against Boyd. Neither party sought review of this judgment.

Boyd then brought a new and separate action against Broyles, this time seeking the $850 which Boyd contends is due him under the contract of May 18, 1961, and which, he says, was never paid him by Broyles. In his complaint in the instant action Boyd alleged that in the prior action between the parties Broyles, by way of defense, pled the contract of May 18, 1961, contending that Boyd was precluded from any recovery because by said contract he, Boyd, had relinquished all claims against Broyles in

exchange for $850. According to the complaint, Broyles testified in the earlier trial that he was "ready, willing, and able" to pay Boyd the $850, and even offered into evidence his check in that amount. Whether said check was actually received into evidence, is not known. In any event, Boyd goes on to allege that after Broyles had won the earlier suit between the parties, Broyles then had a change of heart and refused to pay Boyd the $850.

By answer Broyles denied all and affirmatively pled *res judicata,* contending that the issues sought to be raised in the second action between the parties had been litigated and resolved in the first trial.

Thereafter, both Boyd and Broyles filed motions for summary judgment, with counsel on both sides filing lengthy affidavits detailing the background material set forth above. It was Broyles' position that summary judgment should be entered in his favor on the basis of his affirmative defense of *res judicata.*

Upon hearing, the trial court granted Broyles' motion for summary judgment and entered judgment in Broyles' behalf. By writ of error Boyd now seeks reversal of the judgment thus entered.

In granting Broyles' motion for summary judgment, the trial court did *not* base its action on the *one* ground urged by Broyles in his motion as to why summary judgment should enter in his favor, namely, the ground of *res judicata.* Rather, the trial court entered judgment in Broyles' behalf for the announced reason that inasmuch as Boyd had apparently breached the contract of May 18, 1961, under such circumstance, according to the trial court, Boyd could not compel Broyles to perform by payment of the $850. Specifically, the trial court found that Boyd had breached the contract of May 18, 1961 by seeking and obtaining certain agricultural program payments, when he had agreed to relinquish all such claims to Broyles. Having thus breached the agreement of May 18, 1961, the trial court reasoned that Boyd could not thereafter recover the $850 from

Broyles, and accordingly granted Broyles' motion for summary judgment.

 In our view of the matter the trial court acted precipitously in granting Broyles' motion for summary judgment. It has been said so frequently that it is now almost trite, but summary judgment is still a very drastic remedy which is never warranted except on a clear showing that there is no genuine issue as to any material fact, and summary judgment should never be so used as to compel a party to try his case on affidavits with no opportunity to cross-examine the affiants. *School District v. Grant,* 156 Colo. 328, 399 P.2d 101.

 Broyles' motion for summary judgment was based solely on his *res judicata* argument. The trial court, however, declined to base its action upon this particular ground. And in this regard we agree with the trial court, as under the circumstances it is simply impossible to determine whether *res judicata* has application, or not. Neither the pleadings nor the record in the first case are before us. Counsel for Broyles in his affidavit says the present claim for $850 was disposed of in the first action between the parties. Counsel for Boyd in his affidavit says, in effect, that the present claim is an "outgrowth" of the first action, because in the first action Broyles, in defending against Boyd's several claims, contended that by their agreement of May 18, 1961, he had, in effect, "bought" said claims from Boyd for $850, which sum he was then "ready, willing and able" to pay Boyd. On this state of the record, summary judgment could not be entered in favor of Broyles on any theory of *res judicata.*

 Furthermore, the action taken by the trial court cannot be sustained or justified on the basis of the reason given by the trial court. True, it would appear that Boyd did breach the contract of May 18, 1961. But certainly the pleadings raise the additional issue as to whether any breach by Boyd was thereafter waived by

Broyles. At least Boyd in his complaint alleges, as indicated above, that Broyles in the first trial between the parties testified that as of that very moment he was still "standing" on the contract of May 18, 1961, and that by said contract, according to Broyles, Boyd relinquished all claims against Broyles in exchange for $850, which sum he, Broyles, was then "ready, willing and able" to pay Boyd. Broyles denied these several allegations, and it would appear, then, that this is a matter which could not be resolved on the basis of the affidavits before us.

Although this comes under the heading of gratuitous dictum, under the circumstances it would also have been error for the trial court to have entered judgment in favor of Boyd based on his motion for summary judgment.

The judgment is therefore reversed and the cause remanded with directions that the parties be permitted to amend their pleadings, if they be so inclined, and the matter then proceed to trial.

Mr. Justice Sutton and Mr. Justice Kelley concur.